UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-CR-0267(1) (WMW)
================================================================

UNITED STATES OF AMERICA,

Plaintiff,                              **DEFENDANT'S POSITION
                                         ON SENTENCING**

vs.

Matthew David McCollister,

        Defendant.
================================================================

## INTRODUCTION

Mr. McCollister pled guilty to Count One of the Information, Conspiracy to Commit Health Care Fraud, in violation of 18 U.S.C. section 1347, 1349. The plea agreement contemplated a total offense level of 12 and a criminal history category of I, resulting in a 10-16 month guideline range.

A detailed, 25-page mitigation report, prepared by Amy B. Butler Bleeker, is also being filed on behalf of Mr. McCollister. That report highlights the 3553(a) factors that we rely upon in support of a request for a downward variance and "split sentence" as discussed below.

Because the guideline range is in Zone C of the Sentencing Table, Mr. McCollister asks the Court to exercise its discretion and order a "split sentence,"

1

substituting community confinement or home detention provided that at least one-half of the minimum term is satisfied by imprisonment. The shock and pain of even a 5-month prison sentence, followed by community confinement or home detention, will provide plenty of deterrence and satisfy the other goals of sentencing policy.

Mr. McCollister promptly accepted responsibility, forgoing an indictment and entering a plea to an Information. Mr. McCollister has lost not one, but two careers. His name and face have been paraded across the local newspapers and newscasts several times in the past few months. His conduct took place several years ago, and he did not obtain any money from the two demand letters that are at the heart of this criminal case. We respectfully submit that a split sentence will serve as sufficient, but not greater than necessary consequence and is enough to impress upon him the seriousness of his crime and deter Mr. McCollister from re-offending.

### THE MITIGATION REPORT, FILED SEPARATELY, ADDRESSES THE BACKGROUND OF MATTHEW McCOLLISTER

The defense is also filing a lengthy and thorough mitigation report prepared by Amy B. Butler Bleeker regarding Mr. McCollister's background. Therefore, that will not be repeated here.

### ARGUMENT

"It has been uniform and constant in the federal judicial tradition for the

2

sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.
*Gall v. United States*, 128 S. Ct. 586, 598 (2007), quoting *Koon v. United States*, 518 U.S. 81, 113 (1996). The Sentencing Reform Act, 18 U.S.C. 3551 et seq., imposes an "overarching instruction" that district courts must select a sentence "sufficient but not greater than necessary" to achieve the sentencing goals in section 3553(a)(2). *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007). Those goals include the need for the sentence to (A) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (B) afford adequate deterrence to criminal conduct, (C) protect the public from further crimes of the defendant, and (D) provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner. *Gall*, at 597, n. 6. To arrive at a sentence that serves those goals without being greater than necessary, the Act directs the judge to consider the many factors listed in 3553(a)(1) - (7). These considerations are more than a laundry list of discrete sentencing factors. They comprise "a tapestry of factors, through which runs an overarching principle," the court's duty "construct a sentence that is minimally sufficient to achieve the broad goals of sentencing." *United States v. Rodriguez*, 527 F.3d 221, 228 (1st Cir. 2008).

Section 3553(a)(1) begins with the "broad command" to consider the

nature and circumstances of the offense and the history and characteristics of the defendant. The statute also requires judges to consider the types of sentences available by statute, section 3553(a)(3), including "sentences other than imprisonment," such as probation. *See Gall*, id., and at 595-596 and n.4, 602 (probationary sentence reflected consideration of types of sentence available, and discussing probation as substantial restriction on freedom based on conditions of supervision). Although sections 3553(a)(4) & (5) require the district court to consider the advisory Sentencing Guidelines range and relevant policy statements by the Sentencing Commission, the Guidelines can provide only a "rough approximation" of what might be an appropriate sentence. *Rita v. United States*, 127 S.Ct. 2456, 2465 (2007). Section 3553(a)(6) requires the district court to consider the need to avoid unwarranted disparities in choosing a sentence, yet this encompasses a corresponding duty to avoid "unwarranted similarities" among defendants who are not similarly situated. *See Gall*, at 600 (sentence of probation reflected defendant's voluntary withdrawal from conspiracy, whereas conspirators who did not withdraw received prison terms). Finally, section 3553(a)(7) requires that the court consider the need for restitution, if applicable. The Supreme Court envisions that a district court will normally begin its analysis by accurately calculating the Guideline range, but then may consider arguments that the Guideline sentence should not apply because the guideline itself fails properly to reflect Section 3553(a) considerations, reflects an unsound judgment, does not treat defendant characteristics in the proper way, or that a different

sentence is appropriate regardless. *Rita*, at 2468.

The Supreme Court places nothing off-limits for district courts. All the Guidelines are advisory and a judge may determine that any within Guidelines sentence is "greater than necessary" to serve the objectives of sentencing. *Kimbrough*, at 564. District courts may not simply defer to policies of the Commission. *Rita*, at 2468. Judges may disagree with the guideline range based solely on policy grounds even in a mine-run case, without justifying this disagreement based on an individualized determination that they yield an excessive sentence in a particular case. *Spears v. United States*, 129 S. Ct. 840, 843 (2009); *Kimbrough*, at 567-69. *Rita*, *Kimbrough* and *Spears* supply this power even when the Guideline's provision is a direct reflection of a congressional directive, *Rodriguez*, 522 F.3d at 230, or where that disagreement applies in other "mine-run" situations, or to a wide class of offenders or offenses. *Kimbrough*, at 574-75, *Spears*, at 843.

Ultimately, district courts in every jurisdiction must choose the minimally sufficient sentence to fulfill the purposes of sentencing based on a consideration of all 3553(a) factors. *Kimbrough*, at 570. If a guideline sentence is greater than necessary to achieve those purposes, a different sentence must be imposed. *See, e.g., Gall*, at 593 (district court determined probation, rather than guideline prison term, was sufficient without being greater than necessary to serve sentencing goals). The district court's judgment cannot ever be determined by a choice

between a Guidelines departure or a sentence under Section 3553(a). The Court must consider all the section 3553(a) factors in every case. *See Koon v. United States*, 518 U.S. at 108 (So long as the overall sentence is sufficient but not greater than necessary to comply with the [statutory sentencing] goals, the statute is satisfied).

    A. **The Nature and Circumstances of the Offense, and the History and Characteristics of Mr. McCollister.**

Mr. McCollister is nonviolent offender and does not have a criminal history. He finds himself here because, as a lawyer, Matthew McCollister got sideways in his practice & business dealings. He now understands how runner schemes are harmful not only to insurance companies, but to consumers as well. While the "intended loss" was Fifty Thousand Dollars (in the form of two $25,000 demand letters), no money was ever paid out on either one of those demands. Ultimately, that and other conduct cost him his law license and a good income.

Regarding his history and characteristics, Mr. McCollister presents as a person that overcame alcoholism and worked hard on other character defects that seemed to manifest themselves around the same time as his offense conduct.

The work that he put into getting sober and making changes in his life reflects many positive changes. He was able to strengthen his marriage. He has been a good father for his three children. He gave up practicing law and focused on helping youth basketball players, often in low to low middle class families. He

has helped others struggling with alcohol or chemical dependency as well, and stays close to his own recovery program.

Besides the father and husband that he has been and continues to be, he continues to work on himself with therapy and stays sober, even in the face of a federal criminal sentencing and the loss of both his law and coaching careers.

While he hopefully has many more years to live and shape his legacy, Matthew McCollister has already positively affected so many young lives. Pages 13 through 17 of the Mitigation Report (filed separately) detail the impact of Mr. McCollister's basketball coaching career. In today's sports world, pressure to win is high, in fact, it is way out of proportion. The way coaches and referees are treated by some parents and fans has led way too many of them to walk away from serving. The higher the level of any given sport, the more pressure there is to win. By the time teenagers make it to a high school varsity program, the pressure to perform on the court can overshadow the "student" part of "student-athlete."

So it is admirable that Mr. McCollister's supporters went to great lengths to share about his commitment to helping athletes succeed not only on the basketball court, but in the classroom and community. Mr. McCollister was especially fulfilled when working with urban youth (Mitigation Report at p. 14). At Brooklyn Center High School, Coach McCollister installed a requirement of a "weekly academic progress report" in order for athletes to be able to continue to participate. He wanted to help those young men understand that good

7

academics would empower them in life. It worked: the team's collective GPA rose 0.74 points in one year.

Mr. McCollister took this philosophy with him to several high school programs, most recently at South St. Paul High School. As the news articles and Mitigation Report reflect, he especially enjoyed empowering young men of color. He sought to help them break stereotypes, to do things people didn't think they could do, and to use basketball as a tool to help them get there. His insistence on mandatory study hall prior to practice as well as taking players to unofficial college visits to help them "see bigger things for themselves and their futures" demonstrate his desire to serve others around him. What one of his players said speaks volumes:

> *"Knowing we have somebody on our side…he'll go to war for us…so knowing we have coach Matt, it's like a dad to all of us."*

Other men that Mr. McCollister coached with repeatedly talked about how much Mr. McCollister helped others. His successor coach at South St. Paul high school commented that Mr. McCollister would feed kids and helped the players with off-court issues they were going through.

Mr. McCollister has overcome childhood trauma and chemical dependency. After giving up practicing law, he continued to positively impact a number of teenage boys, not just on the basketball court but off of it as well.

### B. A Split Sentence Balances Sentencing Policies and is Sufficient But Not Greater Than Necessary.

In determining the appropriate sentence under §3553(a), the Court must

8

weigh these factors with the need for the sentence to reflect the seriousness of the offense, to provide just punishment, to deter possible future criminal conduct and to protect the public from further crimes. 18 U.S.C. §3553(a) further requires that the Court, after considering the factors, impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing-just punishment, deterrence, protection of the public and rehabilitation of the defendant.

Prison has greater significance for those imprisoned for the first time. *See U.S. v. Baker*, 445 F.3d 987 (7th Cir. 2006) (affirming non-guideline sentence of 78 months from 108 months for defendant convicted of distributing child porn, justified in part by judge's finding that prison would mean more to this defendant than one who has been imprisoned before, which resonated with goal of "just punishment" in 3553(a)(2)(A) and "adequate deterrence" in Section 3553(a)(2)(B); *see also U.S. v. Paul*, 239 F.App'x 353 (9th Cir. 2007) (defendant's 16-month sentence, the top end of the guideline range for unlawful receipt of federal funding, was unreasonably high because defendant was a first-time offender, returned the funds, and displayed remorse); *U.S. v. Jewell*, 2009 WL 1010877 (E.D.Ark. April 15, 2009) (defendant sentenced to 30 months in prison for aiding and abetting tax evasion, because guideline range near the statutory maximum of 5 years was inappropriate for first time offender); *U.S. v. Cull*, 446 F. Supp. 2d 961 (E.D. Wis. 2006) (non-guideline sentence of 2 months in jail and 4 months home confinement, where advisory range was 10-14 months for

9

marijuana offense by defendant who had never been confined, was sufficient to impress on him the seriousness of his crime and deter him from re-offending); *U.S. v. Qualls*, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) (generally, a lesser prison term is sufficient to deter one who has not been subject to prior lengthy incarceration). Given that Mr. McCollister has never been incarcerated, even a short period of prison time, in the form of a split sentence, will get the message across.

Mr. McCollister will never practice law again. He had stopped practicing law some time ago and turned completely to coaching basketball. There is no ongoing need to protect the public from further crimes. Combined with being disbarred (and even losing a coaching career afterwards), a split sentence will still promote respect for the law and provide a just punishment for the offense.

## CONCLUSION

Based on the factors set forth in 18 U.S.C. §3553(a), as well as the options available to the Court in Zone C of the Sentencing Table, Mr. McCollister asks the court to grant a downward variance or to sentence the matter with 5-months of incarceration followed by 5 months of home confinement or community supervision.

                                        Respectfully submitted,

                                        RYAN PACYGA CRIMINAL DEFENSE

Dated: April 25, 2022           By:   /s/ Ryan M. Pacyga
                                                   Ryan M. Pacyga (#321576)
                                                   333 South 7th Street, Suite 2850

Minneapolis, MN 55402
*Attorney for Defendant*